# Third District Court of Appeal

## State of Florida

Opinion filed August 16, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2118
Lower Tribunal No. 20-7207
_____

## TPC Overtown Block 45, LLC, etc., et al.,
Appellants,

vs.

## Downtown Retail Associates, LLC, etc., et al.,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Armstrong Teasdale LLP, and Glen H. Waldman, and Jeffrey R. Lam, for appellants.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., and Alan J. Kluger, Marko F. Cerenko, Steve I. Silverman, and Lisa J. Jerles, for appellees.

Before LOGUE, C.J., and LINDSEY, and LOBREE, JJ.

LINDSEY, J.

Appellants TPC Overtown, LLC; WW OGP 45, LLC; and Overtown Gateway Partners, LLC appeal a Final Judgment entered in favor of Appellees Downtown Retail Associates, LLC and Michael Swerdlow. The trial court correctly interpreted the contract at issue, and because interpretation of the contract was purely a question of law, summary judgment was proper. Accordingly, we affirm.

## I.   Background

The underlying breach of contract action arises from a dispute between two developers interested in an Overtown development project. In 2013, the Southeast Overtown/Park West Community Redevelopment Agency (the "Agency"), a public agency that encourages development in Overtown, held a formal bidding process for the exclusive right to negotiate development agreements for two vacant properties: Block 45 and Block 55. The Agency ultimately awarded the exclusive negotiation rights to Overtown Gateway Partners, LLC ("OGP").

After OGP secured approval to negotiate development, it signed a "Limited Liability Company Membership Interest Purchase and Sale Agreement" (the "MIPSA") with Downtown Retail Associates, LLC ("Downtown Retail"). The MIPSA contemplated a transaction whereby

2

OGP[1] would sell, and Downtown Retail would purchase, all outstanding membership interests in OGP—including the exclusive right to negotiate development agreements for Block 45 and Block 55. It further outlined a due diligence period that would begin on the effective date and extend until either April 15, 2016, or five days after Downtown Retail and Michael Swerdlow, who led Downtown Retail, received a "final" Block 55 development agreement. Swerdlow personally joined the MIPSA, and agreed to be bound by the provisions of the contract that are at issue in this litigation.

Due to a high level of distrust between OGP and Downtown Retail going into the transaction, the MIPSA was heavily negotiated and contained certain restrictive covenants. Two of these restrictive covenants are at issue: a confidentiality clause and a non-circumvention provision. Provisions of the MIPSA addressing confidentiality[2] entitled OGP to damages if development terminated because of a breach of confidentiality. Specifically, the confidentiality clause at issue stated that "a claim for damages shall arise only in the event that the [Agency] terminates the Block 45 Development Agreement and/or the negotiations involving the Block 55 Development

---

[1] More specifically, two entities called TPC Overtown Block 45, LLC and WW OGP 45, LLC sold a third entity called OGP 45 Manager, LLC, which owned 100% of OGP–including the development rights to Block 45 and Block 55.
[2] The confidentiality clause is in Sections 4.4.1, 4.1.2, and 4.1.3 of the MIPSA.

Agreement **due solely to a Confidentiality Breach** . . . ." (Emphasis added).

The non-circumvention provision[3] entitled OGP to damages if Swerdlow or Downtown Retail were to "**enter into**" any direct or indirect agreement with the Agency to develop Block 45 and Block 55, before either the MIPSA was "consummate[d]" or "during the period which is eighteen (18) months after termination or expiration of [the MIPSA]." (Emphasis added).

Before the due diligence period had expired, the Agency and OGP voluntarily entered into a Termination Agreement to end ongoing development at Block 45. In their Termination Agreement, both the Agency and OGP agreed that "[a]s a result of the inability of the Parties to complete necessary documentation on a timely basis, [OGP] and the [Agency] each desire to exercise their respective termination rights . . . ." As a result, the Block 45 development was terminated.

The Block 55 development was still under negotiation. However, tensions between OGP and the Agency were strained. Through counsel, OGP wrote an email expressing "escalating concerns" about actions purportedly taken by the Agency that "likely violate[d] several laws." The Agency responded to what it called "false allegations, insults, and legal

---

[3] The non-circumvention provision is Section 4.3 of the MIPSA.

threats" by "invoking its right to terminate negotiations as of the date of this letter."

Since the underlying developments were terminated before the due diligence period ended, the MIPSA itself was terminated, and OGP subsequently sued for damages. In Count I of the operative complaint, OGP alleged that Downtown Retail and Swerdlow had violated the confidentiality clause at the time the Block 45 development was terminated. In Count II, OGP alleged that Downtown Retail and Swerdlow had violated the non-circumvention provision at the time the Block 55 development was terminated.

Downtown Retail and Swerdlow moved for summary judgment on both counts. Initially, the trial court entered an Omnibus Order denying this first motion for summary judgment without prejudice. As to Count I, the trial court ordered "parol evidence from the MIPSA's drafting lawyers and the parties on what the intentions were" regarding the confidentiality clause. As to Count II, the trial court permitted the parties to take discovery, stating that "at this time neither party has demonstrated the absence of a genuine issue of material fact . . . in the event the facts are undisputed the Court will entertain a motion(s) for summary judgment on this issue at a later date."

5

Downtown Retail and Swerdlow again moved for summary judgment on Count II, violation of the non-circumvention provision. The trial court noted undisputed evidence that Swerdlow and Downtown Retail had not breached the non-circumvention provision of the MIPSA. The trial court stated that after reviewing the parties' briefing and entertaining oral argument, it was apparent that "[the non-circumvention] provision is clear and unambiguous" and that "during this eighteen (18) month restrictive period Swerdlow did not 'enter into' or 'consummate' any transaction with the [Agency] involving the acquisition or development of the property subject to the MIPSA (referred to as Blocks 45 and 55)." Accordingly, the trial court entered summary judgment in favor of Downtown Retail and Swerdlow on Count II.

Downtown Retail and Swerdlow then moved for summary judgment on Count I, violation of confidentiality. The trial court entered an order granting their motion, finding that now the record was "undisputed" that termination was not "due solely" to a confidentiality breach. The trial court further noted unrebutted testimony that "over time, discussions between the [Agency] and OGP deteriorated, and grew contentious" and that "the [Agency put in writing] that it was terminating Block 55 discussions . . . and made it clear why it was doing so . . . ." It further stated that "no reasonable finder of fact

6

could conclude that OGP's September letter did not contribute, **at least in some part**, to the [Agency's] decision to terminate its discussions with OGP regarding Block 55. Thus, even assuming an actionable confidentiality breach exists, such does not satisfy the 'due solely' requirement of the MIPSA." Accordingly, the trial court entered summary judgment in favor of Downtown Retail and Swerdlow on Count I.

The trial court then entered Final Judgment, incorporating both summary judgment orders, in favor of Downtown Retail and Swerdlow.

OGP appeals.

## II.    Standard of Review

Our standard of review for an order granting summary judgment is de novo. Ibarra v. Ross Dress for Less, Inc., 350 So. 3d 465, 467 (Fla. 3d DCA 2022).

## III.    Analysis

### A.    *Count II – Non-Circumvention*[4]

---

[4] The Motion for Summary Judgment on non-circumvention was filed, and an order entered, before the revisions to Florida Rule of Civil Procedure 1.510. The then-applicable standard was that summary judgment should be granted where "the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510 (effective to April 30, 2021).

In its Final Summary Judgment Order, the trial court "ruled that no genuine dispute of material fact exists on this claim and concluded that there was no breach of the non-circumvention provisions of Section 4.3 of the [MIPSA]." Appellants contend that the non-circumvention clause prohibited Downtown Retail and Swerdlow from taking preparatory steps to pursue a transaction, such as negotiating terms or even expressing interest in the form of a bid. However, Section 4.3 of the MIPSA only prohibits "enter[ing] into" and "consummat[ing]" any "transaction" with the CRA or a contracting entity during an 18-month period.[5]

The plain meaning of Section 4.3 prohibits "Purchaser, Swerdlow and/or its or his affiliated entities" from "enter[ing] into a transaction"—i.e., becoming a party to a transaction—with the Agency without written permission during a specific time period. But nothing in the plain language

_____

[5] Appellants contend that the phrase "enter into" means "to participate or share in" according to the third definition in Merriam-Webster's online dictionary. However, in doing so, they ignore the first two more contextually appropriate definitions: "to make oneself a party to or in," and "to form or be part of." Black's Law Dictionary similarly defines "enter" as follows: "To become a party to <they entered into an agreement>." ENTER, Black's Law Dictionary (11th ed. 2019). As Scalia and Garner observe, "[m]ost common English words have a number of dictionary definitions, some of them quite abstruse and rarely intended. One should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise." Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 70 (2012).

8

prohibits preparatory steps towards such a transaction. Here, it is undisputed that Downtown Retail and Swerdlow did not enter into a transaction with the Agency within the time period prohibited by the MIPSA. Summary judgment was therefore appropriate.

B. *Count I – Confidentiality*[6]

In its Final Summary Judgment Order, the trial court "ruled that no genuine dispute of material fact exists on this claim and concluded that the [Agency] did not terminate negotiations with [OGP[7]] 'due solely to confidentiality breach' as required in order to state a viable claim pursuant to the MIPSA." Appellants contend that the record contains sufficient evidence of causation for a trier of fact to find that termination occurred only because of meetings and negotiations that purportedly constituted a breach of confidentiality.

Section 4.1.2 of the MIPSA plainly allows liability to attach only if the termination is "due solely to a Confidentiality Breach (and not because of any

---

[6] The Motion for Summary Judgment on confidentiality was filed, and an order entered, after the revisions to Florida Rule of Civil Procedure 1.510. The new standard deliberately reflects the federal rule. Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510 (effective May 1, 2021).

[7] The original language referred to "Plaintiffs"—more specifically, TPC Overtown Block 45, LLC, WW OGP 45, LLC, and Overtown Gateway Partners, LLC.

act or omission of or by Seller or others) . . . or for any other reason or event."

Therefore, if there is any other reason that the Agency terminated negotiations, even if there was also a confidentiality breach, liability cannot attach under this section because the termination is not due solely to the breach of confidentiality. Here, the undisputed record shows that the Block 45 termination was mutual. It is undisputed that the Agency did not terminate negotiations due solely to a breach of confidentiality as prohibited by the MIPSA. Summary judgment was therefore appropriate.

## IV. Conclusion

Construction of the contract at issue was purely a question of law suitable for resolution by summary judgment. The trial court correctly enforced the MIPSA as it was agreed to by the parties. At no point did TPC Overtown, LLC; WW OGP 45, LLC; and Overtown Gateway Partners, LLC meet the applicable burden to show a genuine issue of material fact. Therefore, summary judgment was appropriate, and we affirm the trial court's decision.

Affirmed.